IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BOBBY RAY OSBY                                                    PLAINTIFF

V.                        CASE NO. 3:15-CV-246-DPM-BD

CRAIGHEAD COUNTY
SHERIFF'S DEPARTMENT, et al.                          DEFENDANTS

RECOMMENDED DISPOSITION

I.     Procedure for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to Judge D.P.
Marshall Jr. You may file written objections to this Recommendation. If you file
objections, they must be specific and must include the factual or legal basis for your
objection. Your objections must be received in the office of the United States District
Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without
independently reviewing the record. By not objecting, you may also waive any right to
appeal questions of fact.

II.     Background

Bobby Ray Osby, an Arkansas Department of Correction ("ADC") inmate
formerly housed at the Craighead County Detention Center ("Detention Center"), filed
this civil rights lawsuit without the help of a lawyer. (Docket entry #1)

In his amended complaint, Mr. Osby alleges that he complained to each of the

Defendants about significant stomach pain, but they failed to provide him any medical

treatment while he was housed at the Detention Center.  In addition, he alleges that all of

the Defendants were aware of his medical history and his need for treatment.  (#18)

Based on these allegations, the Court found that Mr. Osby had stated deliberate-

indifference claims against Defendants Hall, Boyd, Harrell[1], and Jackson

("Defendants").[2]

The Defendants have now moved for summary judgment on all of Mr. Osby's

claims against them.  (#37, #40)  To date, Mr. Osby has not responded to the Defendants'

motions, and the time for responding has passed.  (#43)

III.    **Discussion**

A.      Standard

Summary judgment is appropriate only when the evidence, viewed in the light

most favorable to the nonmoving party, shows that there is no real dispute about the facts

that are important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 246, 106 S.Ct. 2505 (1986).

B.      Deliberate-Indifference Claim

Deliberate indifference to a prisoner's serious medical needs is a violation of the

_____

[1]  The Clerk is instructed to update the docket sheet to correctly identify Defendant
Todd as Defendant Todd Harrell.  (#27)

[2]  All other Defendants have been terminated from the case.  (#25, #29)

Eighth Amendment's proscription against inflicting unnecessary and wanton pain. *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This applies to jailers who intentionally deny or delay access to medical care or intentionally interfere with prescribed medical treatment.  *Id*.

A state official can be held liable for an eighth amendment violation, however, only if he "knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety."  *Nelson v. Corr. Med. Servs*., 583 F.3d 522, 528 (8th Cir. 2009).  To state a claim for deliberate indifference, Mr. Osby must allege not only that he suffered from a serious medical need, but also that the Defendants, "actually knew of but deliberately disregarded his serious medical need."[3]  *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).

Deliberate indifference is "more than negligence, more even than gross negligence."  *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).  In other words, "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference."  *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Fourte*, 746 F.3d at 389). To prevail, Mr. Osby must show that the Defendants' actions were "so inappropriate as to

---

[3] A medical condition is considered "objectively serious" if the prisoner was diagnosed by a doctor or if the need for care is so obvious that a lay person would recognize the medical need.  *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014).

evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).  See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015) (to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

1.     Undisputed Medical History

According to Mr. Osby's medical records, in 2014, when Mr. Osby was previously incarcerated at the Detention Center, he underwent a CT scan.  (#38-1 at p.2)  That scan revealed a mass in his right abdomen.  (*Id.*)

After he was released from custody and was living in Illinois, he underwent another CT scan of his abdomen, as well as an abdominal sonogram.  These tests also revealed a mass in his mid-right abdomen.  (#38-1 at p.3; #38-2 at p.1)  Because Mr. Osby could not tolerate the pain of the abdominal sonogram, the treating physician was unable to biopsy the mass.  (#38-2 at p.1)

From April of 2015 through June of 2015, Mr. Osby's treating physician was Dr. Mark Feldman in Belleville, Illinois.  During that time, Mr. Osby repeatedly sought medication for stomach pain from Dr. Feldman.  (#38-3 at pp.2, 9, 10)

In July of 2015, Dr. Feldman sent Mr. Osby to Dr. Douglas Aach for a surgical consultation.  (#38-3 at p.12; #38-4 at p.1)  On July 7, 2015, however, Mr. Osby was

arrested and taken into the custody of the St. Clair County Sheriff's Department in Illinois.  (#38-5 at p.1)

On July 20, 2015, Mr. Osby was transferred to the Detention Center.  (#38-6 at p.1)  On that same day, he requested medical treatment for stomach pain.  (#38-7 at p.1)  The following day, Defendant Jackson examined him for complaints of stomach pain, vomiting, and nausea.  (*Id*.)  Defendant Jackson ordered Mr. Osby's medical records, prescribed Tylenol, and recommended that a physician be contacted.  (*Id*.)

On July 28, 2015, Mr. Osby submitted another sick-call request complaining that he was having an anxiety attack and had not eaten in three days.  (*Id*. at p.4)

On July 30, 2015, medical staff examined Mr. Osby.  (*Id*. at p.5)  Dr. Bentley (not a party to this lawsuit) examined Mr. Osby, but noted that Mr. Osby would not cooperate during the examination and walked out of the exam room.  (*Id*.)

Later that day, Mr. Osby submitted another sick-call request explaining that he needed to go to the hospital and undergo immediate surgery.  (*Id*. at p.6)  Nurse Lawrence (not a party to this lawsuit) responded, stating that Dr. Bentley had examined Mr. Osby earlier that day and that his complaints had already been addressed by the medical staff. (*Id*.)

On August 1, 2015, Mr. Osby submitted another sick-call request, again indicating his need for emergency medical treatment.  (*Id*. at p.7)  At that time, Nurse Black (not a

party to this lawsuit) attempted to assess Mr. Osby in his cell.  (*Id*.)  She noted that Mr. Osby was irritated and yelling.  (*Id*.)

On August 3, 2015, Mr. Osby refused to take two Tums tablets.  (*Id*. at p.8)  On August 4, 2015, he submitted another sick-call request complaining of pain and requesting to be taken to the hospital.  Defendant Jackson responded to Mr. Osby's sick-call request and explained that the physician had ordered Mr. Osby take Tums, which he had refused.  She also noted that his medical records had been ordered.

On August 6, 2015, Mr. Osby submitted a sick-call request, again asking to be taken to emergency surgery.  (*Id*. at p.10)  Medical staff responded that he had been seen by the physician, and his vital signs were stable.  Mr. Osby was told that he would have to explain his symptoms to be treated at sick-call.

On August 10, 2015, Mr. Osby submitted another sick-call request, complaining of extreme abdominal pain.  (*Id*. at p.12)  On August 11, 2015, medical personnel examined Mr. Osby.  At that time, a liver panel was ordered, and the physician was to be contacted. (*Id*.)

On August 14, 2015, Mr. Osby's medical records indicate that he had gained two pounds and, the following day, medical personnel notified Dr. Bentley about Mr. Osby's lab results.  (*Id*. at p.15)

On August 23, 2015, Nurse Black examined Mr. Osby based on his complaints of stomach pain.  (*Id*. at p.16)  He was shaking and irritated.  (*Id*.)  Nurse Black noted that the physician would be contacted.   (*Id*.)

On August 31, 2015, Mr. Osby submitted a sick-call request explaining his need for pain medication.  (*Id*. at p.17)  Defendant Jackson examined Mr. Osby the following day and again noted that the physician would be contacted.  (*Id*.)

Again, on September 8, 2015, Mr. Osby submitted a sick-call request asking for pain medication.  (*Id*. at p.19)  Medical personnel noted that ibuprofen and Tylenol had been ordered for Mr. Osby.

On September 13, 2015, Mr. Osby submitted yet another sick-call request.  (*Id*. at p.21)  Medical personnel responded that the physician had not given orders for any new treatment and noted that Mr. Osby would be evaluated again on October 1, 2015.  (*Id*.)

On September 21, 2015, Mr. Osby submitted a sick-call request demanding surgery and complaining about stomach pain.  (*Id*. at p.22)  Medical personnel evaluated Mr. Osby the following day, noting that he was to continue taking the medication as ordered, and noting that the physician was to be contacted.  (*Id*. at p.23)

On September 24, 2015, Mr. Osby submitted a sick-call request informing medical staff that he was throwing up and had diarrhea.  He again asked to be taken to the emergency room.  (*Id*. at p.24)  Defendant Jackson responded to the sick-call request and noted "call MD."  (*Id*.)

The next day, Defendant Jackson examined Mr. Osby and advised him to continue taking ibuprofen and Tylenol.  (*Id*. at p.25)  Again, the physician was to be contacted. (*Id*.)

On October 5, 2015, Mr. Osby submitted another sick-call request.  (*Id*. at p.26) The next day, medical personnel examined Mr. Osby and again noted that no new orders had been given.  (*Id*. at p.27)  In addition, the physician was to be contacted.  (*Id*.)

On October 6, 2015, Defendant Jackson submitted a health services request form for ADC jail detainees on behalf of Mr. Osby.  (*Id*. at p.29)  She wrote, "[p]lease fast track inmate [] due to previous medical condition."  On or around October 8, 2015, Mr. Osby was released from the Detention Center.

1.      Defendant Jackson

Defendant Jackson attaches her affidavit to her motion for summary judgment. (#38-9)  According to Defendant Jackson's testimony, as a nurse, she lacked the authority to order medication or treatment for any inmates that she examined at the Detention Center.  (*Id*. at p.1)  Rather, physicians are the only medical personnel permitted to order treatment or medication for inmates.

Here, each time Defendant Jackson examined Mr. Osby, she reported her findings to the physician.  (*Id*. at p.2)  Although Mr. Osby complains that Defendant Jackson never ordered that he be transported to the hospital for either emergency treatment or surgery, the undisputed evidence shows that Defendant Jackson lacked the authority to make any

8

such treatment decisions.  Mr. Osby's medical records show that Defendant Jackson evaluated his medical needs promptly and provided the treatment recommended by the physician.  Mr. Osby has not presented any evidence that Defendant Jackson either intentionally denied him medical care or intentionally interfered with his prescribed medical treatment.

Further, according to Mr. Osby's medical records, Defendant Jackson attempted to assist Mr. Osby by seeking his transfer to the Arkansas Department of Correction so that he could receive additional medical care there.  (#38-7 at p.29)  Accordingly, the Court cannot  conclude that Defendant Jackson acted with "criminal recklessness" in failing to adequately treat Mr. Osby's medical needs.  Rather, she attempted to assist him in receiving additional medical care.

Because Mr. Osby has failed to come forward with any evidence contradicting Defendant Jackson's sworn testimony, Defendant Jackson is entitled to summary judgment on Mr. Osby's claims against her.

> 2.      Defendants Hall, Boyd, and Harrell

Defendants Hall, Boyd, and Harrell (the "County Defendants") attach the affidavit of Defendant Todd Harrell, the assistant jail administrator at the Detention Center, in support of their summary judgment motion.  (#42-1)  Defendant Harrell testifies that the County does not provide inmates medical care or treatment; nor does it determine which inmates see medical care providers either at or through the Detention Center.  (*Id*. at p.2)

Defendant Harrell explains that, during the time period relevant to this lawsuit, a third party provided Detention Center inmates medical treatment.  That third party "determined the course of treatment for the detainees."  (*Id*.)  When an inmate requested medical treatment, Detention Center officials instructed the inmate to submit a sick-call request form to the medical department.  (*Id*.)

Here, according to the undisputed evidence presented, Mr. Osby was evaluated by medical personnel each time he submitted a sick-call request.  Even assuming that the County Defendants were negligent in handling Mr. Osby's sick-call requests, that conduct falls short of a constitutional violation.  Even gross negligence is insufficient to support a deliberate-indifference claim.

Mr. Osby has not presented any evidence that the County Defendants either intentionally denied him medical care or intentionally interfered with his prescribed medical treatment.  Because Mr. Osby has failed to come forward with any evidence to support a finding that the County Defendants were responsible for his medical care or that they were criminally reckless in providing that care, the County Defendants also are entitled to judgment as a matter of law on Mr. Osby's claims against them.

IV.   **Conclusion**

The Court recommends that the Defendants' motions for summary judgment (#37,

#40) be GRANTED.  Mr. Osby's claims should be DISMISSED, with prejudice.

DATED this 7th day of September, 2016.

UNITED STATES MAGISTRATE JUDGE